UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES W. LAGROTTERIA,<br>   Petitioner<br><br>        V.<br><br>UNITED STATES OF AMERICA,<br>   Respondent | )<br>)<br>)<br>)   Civil Action<br>)   No. 04-10633-RWZ<br>)<br>) |

**GOVERNMENT'S OPPOSITION TO PETITIONER'S
MOTION PURSUANT TO 28 U.S.C. § 2241**

Introduction

Petitioner, James W. Lagrotteria, ("Lagrotteria"), has moved pursuant to 28 U.S.C. § 2241 to reduce his sentence for his 2001 conviction for conspiracy to distribute oxycodone, in violation of 21 U.S.C. § 846, and conspiracy to engage in the unlicensed wholesale distribution of a prescription drug, in violation of 18 U.S.C. § 371 and §§ 21 U.S.C. § 331(t), 353(e)(2)(A) and 333(b)(1)(D). Lagrotteria asserts that an amendment to the sentencing guidelines relating to the calculation of the weight of oxycodone[1] makes him eligible for a sentence reduction. His

---

[1] Amendment 657 amended Section 2D1.1(c), Note (B), of the "*Notes to Drug Quantity Table" by specifying that the weight of oxycodone is the weight of the controlled substance itself in the pill, capsule or mixture. The amendment further altered the Drug Equivalency Table, Note 10, by replacing "1 gm of Oxycodone = 500 gm of marihuana," with "1 gm of Oxycodone (actual) = 6700 gm of marihuana."

   A copy of the amendment, along with the detailed explanation of the reason for it, is attached to this response as Exhibit 1. Essentially, the Commission sought to address proportionality issues in sentencing oxycodone offenses because of different formulations of medicines containing oxycodone, such as Percocet

petition should fail because it is improperly filed under 28 U.S.C. § 2241 and because the amendment on which he relies would not, in fact, reduce the guidelines range applicable to him.

## Procedural History

On June 20, 2001, a federal grand jury returned a three-count indictment charging in Count One that, between February and May 2001, Lagrotteria conspired with Lena Prudhomme, Edward J. King, Robert Connell, and Sean Murphy to possess with intent to distribute and to distribute oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 846. Lagrotteria also was charged in Count Three with conspiring during the same period with Prudhomme and King to engage in the wholesale distribution in interstate commerce of the prescription drug OxyContin, in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331(t), 353(e)(2)(A) and 333(b)(1)(D). Lagrotteria was not charged in Count Two.

On December 14, 2001, Lagrotteria pleaded guilty to both Counts One and Three pursuant to a cooperation plea agreement. In the agreement, the government and Lagrotteria both took the

---

and OxyContin, and because of different amounts of oxycodone in OxyContin pills of identical weight. Although the amendment requiring consideration of the actual weight results in somewhat lower penalties for offenses involving Percocet, and leaves the penalties for 10 mg OxyContin the same, the penalties for all other doses of OxyContin are substantially increased. As noted, the defendant pleaded guilty to a conspiracy responsible for the distribution of about 19,000 OxyContin 80 mg tablets.

2

position that the readily provable amount of oxycodone for which he was responsible was 19,000 tablets and that this quantity of oxycodone was the equivalent of about 2,565 kilograms of marijuana under the drug equivalency table of the applicable sentencing guidelines. The Probation Office reached the same result in the Presentence Report. The calculation, briefly, is as follows: The guidelines and controlling First Circuit case law instructed at the time that the weight of the entire tablet, rather than the weight of the controlled substance alone, be used to determine the drug quantity. See United States v. Limberopoulous, 26 F.3d 245 (1st Cir. 1994); U.S.S.G. § 2D1.1 Note A of *Notes to Drug Quantity Table ("Unless otherwise specified, the weight of the controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance.") Each 80 mg OxyContin tablet weighs about 270 milligrams and thus, 19,000 of them resulted in a weight of 5,130,000 milligrams, or 5,130 grams of oxycodone. The conversion table in effect at the time of Lagrotteria's sentencing, U.S.S.G. § 2D1.1, directed that 1 gram of oxycodone is equivalent to 500 grams of marijuana. Therefore, 5,130 grams of oxycodone converted to 2,565,000 grams (or 2,565 kilograms) of marijuana. Under U.S.S.G. §2D1.1(c)(4), the offense level for 1,000 to 3,000 kilograms of marijuana was 32. The defendant received a 3-level reduction for

position that the readily provable amount of oxycodone for which he was responsible was 19,000 tablets and that this quantity of oxycodone was the equivalent of about 2,565 kilograms of marijuana under the drug equivalency table of the applicable sentencing guidelines. The Probation Office reached the same result in the Presentence Report. The calculation, briefly, is as follows: The guidelines and controlling First Circuit case law instructed at the time that the weight of the entire tablet, rather than the weight of the controlled substance alone, be used to determine the drug quantity. See United States v. Limberopoulous, 26 F.3d 245 (1st Cir. 1994); U.S.S.G. § 2D1.1 Note A of *Notes to Drug Quantity Table ("Unless otherwise specified, the weight of the controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance.") Each 80 mg OxyContin tablet weighs about 270 milligrams and thus, 19,000 of them resulted in a weight of 5,130,000 milligrams, or 5,130 grams of oxycodone. The conversion table in effect at the time of Lagrotteria's sentencing, U.S.S.G. § 2D1.1, directed that 1 gram of oxycodone is equivalent to 500 grams of marijuana. Therefore, 5,130 grams of oxycodone converted to 2,565,000 grams (or 2,565 kilograms) of marijuana. Under U.S.S.G. §2D1.1(c)(4), the offense level for 1,000 to 3,000 kilograms of marijuana was 32. The defendant received a 3-level reduction for

acceptance of responsibility, resulting in an adjusted offense level of 29, and a guidelines range of 97 to 121 months. At sentencing on November 20, 2002, the government asked the Court to depart downward based on Lagrotteria's substantial assistance and recommended a sentence of 65 months imprisonment. The Court granted the motion and departed farther than the government recommendation, imposing a sentence of 39 months imprisonment.

On March 26, 2003, the United States Sentencing Commission promulgated amendment 657 which changed the drug quantity table in § 2D1.1 to use the weight of the actual oxycodone in the pill, rather than the weight of the entire pill. The conversion factor was increased, however, so that 1 gram of oxycodone is now the equivalent of 6700 grams of marijuana, rather than 500 grams. The Commission voted on November 5, 2003 to make the amendment retroactive. (A copy of the minutes of the commission meeting is attached as Exhibit 2).

## ARGUMENT

I. **28 U.S.C. § 2241 DOES NOT AFFORD PETITIONER RELIEF HERE**

   A. **A § 2241 Motion Properly Challenges the Manner of Execution of One's Sentence and must Be Brought in the Custodial District.**

Lagrotteria has styled his claim for relief as a petition for writ of habeas corpus under 28 U.S.C. § 2241. This is not the proper vehicle, however, with which to make his claim that his

4

sentence should be reduced because of a change in the guidelines which has been given retroactive effect. Rather, section 2241 petitions are properly brought to challenge the manner of execution of one's sentence. *United States v. Barrett*, 178 F.3d 34, 50 n.10 (1st Cir. 1999)("Federal prisoners are permitted to use § 2241 to attack the execution, rather than the validity, of their sentences"); *Jiminian v. Nash*, 245 F.3d 144, 147-48 (2d Cir. 2001)("motion pursuant to § 2241 generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, types of detention and prison conditions.")(emphasis in original.) Moreover, if Lagrotteria's claim was one cognizable under section 2241, it should have been filed, and addressed, in the district where he is incarcerated, that is, the Southern District of Georgia.[2]

**B.  The Proper Basis to Request a Sentence Modification Based On a Retroactive Change in the Sentencing Guidelines is Pursuant to 18 U.S.C. § 3582(c).**

In certain limited circumstances, a sentencing court may modify a sentence after it has been imposed. One such

---

[2]Lagrotteria is incarcerated in a federal facility in Jesup, Georgia.

5

circumstance is set forth in 18 U.S.C. § 3582(c) which provides that:

> The court may not modify a term of imprisonment once it has been imposed except that-
> ******
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 944(o), upon motion of the defendant..., the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The applicable policy statement is found at U.S.S.G. §1B1.10 which provides:

> (a) Where a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, a reduction in the defendant's term of imprisonment is authorized under 18 U.S.C. § 3582(c)(2). If none of the amendments listed in subsection (c) is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement and thus is not authorized.
>
> (b) In determining whether, and to what extent, a reduction in the term of imprisonment is warranted for a defendant eligible for consideration under 18 U.S.C. §3582(c)(2), the court should consider the term of imprisonment that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced, except that in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served.
>
> (c) Amendments covered by this policy statement are listed in Appendix C as follows: 126, 130, 156, 176, 269, 329, 341, 371, 380, 433, 454, 461, 484, 488, 490, 499, 505, 506, 516, 591, 599, 606, and 657.

6

As noted, the applicable amendment here is 657, which the Sentencing Commission has determined should be applied retroactively. Thus, the Court would have discretion to reduce Lagrotteria's sentence in this case if the application of the amendment to his case resulted in a lower guideline range. But, as will be further explained below, the amendment actually increases the defendant's guidelines range.

### C. The Change in the Guidelines by Amendment 657 Would Increase the Sentencing Guidelines Range Applicable to Lagrotteria's Case.

Lagrotteria pleaded guilty to a conspiracy, and admitted responsibility for, the distribution of some 19,000 80 mg OxyContin tablets. As explained by the Commission, Amendment 657 resulted in lowering the penalties only for Percocet offenses, kept the penalties the same for offenses involving 10 mg OxyContin and substantially increased the penalties for all other dosage amounts of OxyContin. Thus, if the defendant were sentenced today and held responsible for the distribution of 19,000 80 mg OxyContin tablets, the government submits that the guidelines range would be computed as follows: The number of tablets, 19,000, is multiplied by 80 (the milligrams of the narcotic in each tablet) to arrive at 1,520,000 milligrams or 1,520 grams of oxycodone. This converts to the equivalent of

7

10,184,000 grams or 10,184 kilograms of marijuana.[3] The base offense level for more than 10,000 but less than 30,000 kilograms of marijuana is 36, four levels higher than the petitioner's base offense level at the time of his sentencing. Indeed, application of the present guidelines to just the pills seized in this case results in a base offense level of 32, the same base offense level at which the petitioner was originally scored for **all** 19,000 pills in the conspiracy.[4] The petitioner would be worse off, not better, if he were sentenced today and the guidelines, as amended, were applied to his case.

---

[3] This result is reached by multiplying 1,520 (grams of oxycodone) by 6700 (1 gram of oxycodone is deemed the equivalent of 6700 grams of marijuana).

[4] There were 4,599 80 mg tablets (1,380 from Lagrotteria's house) and 23 40 mg tablets seized during the investigation of this case. According to the lab reports, the actual narcotic component of all of the tablets combined was 361.74 grams of oxycodone, which converts to 2,423,658 grams (or 2,423 kilograms) of marijuana. More than 1,000 but less than 3,000 kilograms of marijuana results in a base offense level of 32.

## Conclusion

For the foregoing reasons, the government opposes Petitioner's § 2241 Petition for Writ of Habeas Corpus, and asks this Court to deny Petitioner any relief.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: *Sandra S. Bower*
SANDRA S. BOWER
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3184

## CERTIFICATE OF SERVICE

This is to certify that I have this day, the 7th day of May, 2004, served upon James Lagrotteria, # 47132-004, Federal Satellite Low, 2650 Highway 301 South, Jesup, GA 31599 a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery.

*Sandra S. Bower*
SANDRA S. BOWER
Assistant United States Attorney